PANHANDLE EASTERN PIPE LINE COMPANY, *Appellee,* v. RICHARD T. FADELY, As Director of Revenue of the State of Kansas, and WALTER E. PEERY, As State Treasurer of the State of Kansas, *Appellants.*

No. 42,446

HUGOTON PRODUCTION COMPANY, *Appellee,* v. RICHARD T. FADELY, As Director of Revenue of the State of Kansas, and WALTER E. PEERY, As State Treasurer of the State of Kansas, *Appellants.*

(369 P. 2d 356)

Opinion filed March 3, 1962.

*Robert C. Londerholm,* chief attorney, department of revenue, argued the cause, and *William M. Ferguson,* attorney general, and *A. K. Stavely,* assistant attorney general, were with him on the briefs for the appellants.

*Jeff A. Robertson,* of Topeka, argued the cause, and *C. R. Kirkbride,* of Kansas City, Mo., was with him on the briefs for the appellee, Panhandle Eastern Pipe Line Company.

*Daniel R. Hopkins,* of Garden City, argued the cause, and *Ray H. Calihan, Logan N. Green,* and *Ray H. Calihan, Jr.,* all of Garden City, were with him on the briefs for the appellee, Hugoton Production Company.

The opinion of the court was delivered by

ROBB, J.: The appeals in these mandamus actions were consolidated in this court after the parties stipulated on January 8, 1962, that the decision in No. 42,445 would govern and constitute the decision in No. 42,446 and our consideration herein will, therefore, be confined to the appeal by Panhandle Eastern Pipe Line Company.

Pertinent facts stipulated by the parties are that the action was for recovery of $36,485.24 in taxes paid by plaintiff, the appellee here, pursuant to the oil and gas severance tax act subsequently declared unconstitutional by this court. Plaintiff produced natural gas from extensive leasehold acreage located in Texas, Oklahoma, and Kansas and in addition purchased natural gas produced (by others) in those states. This gas was transported and sold in interstate commerce in Texas, Kansas, Missouri, Illinois, Indiana, Ohio, and Michigan. Oil was also produced by plaintiff from such leasehold acreage in Kansas and during the existence of the oil and gas severance tax act oil was sold to the Century Refining Company of Garden City, Kansas. On the acreage leased by plaintiff seven-eighths of the gas produced was the property of plaintiff and, under the terms of the act (G. S. 1957 Supp., 79-4201 to 79-4215, incl.) plaintiff was obligated to pay a severance tax rate of 1% on seven-eighths of the value of the gas produced. Due to the penalties and interest provided by the act (79-4210) plaintiff, under written protest, had paid or caused to be paid the total sum of $36,485.24 and therefore sought to recover a refund of that amount by mandamus action. Plaintiff had awaited the testing and determining of the constitutionality of the act by this court in preference to availing itself of judicial proceedings or administrative relief through the board of tax appeals in order to avoid a multiplicity of suits.

The written protest notices accompanying each payment of the tax on the gas or oil contained the following language:

". . . or to take such further action as it deems appropriate to recover the sums so paid, in the event that the Act is by the courts declared unconstitutional."

Upon receipt of each protested payment of severance tax, the director of revenue retained the letter of protest in his files and forwarded the money to the state treasurer who credited it to the general fund. All severance tax payments were credited to the

general fund daily from August 6, 1957, to and including January 30, 1958. Plaintiff has not been refunded any of the money it paid.

Plaintiff instituted proceedings for administrative relief (G. S. 1949, 79-1702) with the board of tax appeals created and authorized to act under G. S. 1957 Supp., 74-2433, *et seq.*, and after hearing, that board, in concluding it did not have jurisdiction, made the following order on April 9, 1959:

"After being fully advised in the premises, the Board finds that the severance tax enacted by the legislature in 1957, is an excise tax in accordance with *State, ex rel., v. Kirchner,* 182 Kan. 622. Further, that this Board has no authority to order a refund under G. S. 1949, 79-1702, of an excise tax, and that the only authority which said Board has under this statute is in regard to ad valorem tax. Therefore, the application should be denied."

Finally, it was stipulated that plaintiff had filed its motion in the court below for an alternative writ of mandamus and the writ issued pursuant thereto is the one presently before this court.

On May 13, 1960, the trial court permitted plaintiff to amend its motion for alternative writ of mandamus as follows:

"10. That refusal to refund said invalidly assessed taxes constitutes a deprivation of plaintiff's property without due process of law and denies to plaintiff the equal protection of the laws of the State of Kansas, all in violation of the 14th amendment to the Constitution of the United States."

In rendering judgment for plaintiff the trial court, in a letter dated December 5, 1960, in pertinent part stated:

"Plaintiff paid the assessed taxes involuntarily, under duress and coercion, with proper protest. This protest should have been forwarded by the Director of Revenue to the State Treasurer."

In its formal journal entry of judgment the trial court, in addition to overruling defendant's motion for new trial, found that plaintiff had involuntarily, under duress and coercion, and with proper protest paid $34,121.91 and that Century Refining Company, for plaintiff's account, had involuntarily, under duress and coercion, and with proper protest paid $2,363.33 under the oil and gas severance tax act which has since been declared unconstitutional by this court. (*State, ex rel., v. Kirchner,* 182 Kan. 437, 438, 439, 321 P. 2d 183; 182 Kan. 622, 623, 624, 322 P. 2d 759.) The assessment became invalid, the tax paid should have been refunded, plaintiff was deprived of its property without due process of law and plaintiff is entitled to a peremptory writ commanding the state treasurer to refund forthwith to plaintiff the sum of $36,485.34. The writ was ordered issued.

On January 4, 1961, the trial court issued the peremptory writ commanding the state treasurer immediately upon receipt of the writ to refund $36,485.24 to plaintiff and on the same date defendants perfected this appeal.

Article 2, section 24, of our state constitution provides:

"No money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law, and no appropriation shall be for a longer term than two years."

From the sequence of facts of this particular case it may appear it would have been better, as the trial court found, for the director of revenue to have turned plaintiff's protest notices over to the state treasurer with the tax payments instead of placing the notices in his files and, in turn, for the treasurer to have made some attempt to hold the amounts paid in a special fund. However, no constitutional or statutory requirements exist for the director of revenue or state treasurer so to do and no case authority has been cited showing they have any such duties under the law and the facts as here presented. In view of the above-quoted insurmountable constitutional provision, the courts cannot now say the state treasurer can reach into any fund and pay back to the plaintiff the sum of the protested taxes although morally and in good conscience it would seem plaintiff is entitled to recover back the taxes it paid under the severance tax act.

Plaintiff relies on *Greenabaum v. King*, 4 Kan. 332, where in the first paragraph of the syllabus it was stated:

"An illegal tax, paid under duress, to prevent seizure of goods, may be recovered of the county treasurer, if he had notice of the facts, and of the involuntary payments, while the money was yet in his hands."

Obviously a situation involving a county treasurer is different from one involving the state treasurer and a thorough reading of the opinion makes the difference even more convincing in view of the facts of that particular case.

Our attention is directed to two more recent cases: *Kittredge v. Boyd*, 136 Kan. 691, 18 P. 2d 563, and *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 327 P. 2d 836. The Kittredge case was a mandamus action brought by a plaintiff who paid taxes under protest. There the state treasurer received the remittance and placed it in an account designated, "the protested inheritance and special tax account." The statute under which the tax was paid was declared unconstitutional and the writ of mandamus allowed but in that instance the money had never been placed in the general

revenue fund. Other details of that case are not pertinent here but mention should perhaps be made that the opinion included very strong dicta to the effect that a plaintiff has another remedy where an action is not commenced until the illegal tax money has been merged into the state's general fund, and further commented:

". . . under our practice, the plaintiff would probably have to go to the legislature for relief." (p. 695.)

In the Felten Truck Line case the question did not come up in the same manner as it has in our present case. There a part of the taxes paid under protest was paid into the annual school fund, which could not be reached by plaintiffs, and prior to the payment of the remainder of the taxes under protest, this court ordered such taxes to be impounded in a trust fund account or special account as protested taxes. Subsequently the court ordered the taxes refunded and paid out of this fund by the state treasurer.

We have read and considered other authorities submitted by the parties but we think the above are sufficiently determinative of the question and we are compelled to conclude that plaintiff, by an action in mandamus (G. S. 1949, 60-1702, *et seq.*), cannot recover back the taxes it paid under protest notwithstanding the fact the law under which such taxes were paid was declared unconstitutional.

Reversed.

SCHROEDER, J., dissents.